IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MICHAEL WOODS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. |
| 3BTECH, INC.<br>3431 William Richardson Drive<br>South Bend, Indiana 46628, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Michael Woods ("Woods"), by counsel, Michael P. Misch, and Anderson, Agostino & Keller, P.C., and for his Complaint against 3BTech, Inc. ("3BTech"), states and alleges the following:

## I. NATURE OF THE ACTION:

1.     Woods, an individual with a qualified disability, brings this action against 3BTech, alleging that 3BTech discriminated against Woods because of his disability and in contravention of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), and Family and Medical Leave Act, 29 U.S. Code § 2601 et seq. (FMLA).

## II. THE PARTIES:

2.     At all relevant times, Michael Woods was a resident of St. Joseph County, Indiana, residing at 1310 Parliament Dr., Apt. D, South Bend, IN 46637. He currently resides at

985 Woods Edge Dr. Apt. C, Niles, MI 49120.

3.     At all relevant times, 3BTech was organized in the State of Indiana and had its principal place of business located at 3431 William Richardson Dr., South Bend, Indiana 46628.

## III.  JURISDICTION AND VENUE:

4.     This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331.

5.     Woods is an "employee" as that term is defined by 29 U.S.C. § 630(f).

6.     3BTech is a qualified "employer" as the term is defined by 29 U.S.C. § 630(b)[1].

7.     The acts of 3BTech's administrator's office, officers, managers, supervisors, employees, or agents, are also the acts of 3BTech.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all events, transactions, occurrences, and material acts of 3BTech's administrators, officers, managers, supervisors, employees, or agents, concerning the matter have arisen within the geographical environs of the Northern District of Indiana.

9.     Woods is bringing these proceedings within the time limits as identified in the Equal Employment Opportunity Commission Form 161-B, issued under mailing date of June 30, 2017. A photocopy of the aforesaid Equal Employment Opportunity Commission Form 161-B is attached hereto, and made a part hereof and identified as "Plaintiff's Exhibit A."  Woods received the Form 161-B on or after June 30, 2017.  Therefore, Woods timely filed this action within ninety (90) days of his receipt of EEOC Form 161-B.

---

[1] 3BTech is closely affiliated with several other companies including but not limited to Zake International Inc., Zake IP Holdings, LLC, Swagway, LLC, DC 3B LLC, Creisen Holdings, LLC, Rollibot LLC and Xbay Inc., all of which, based on knowledge and belief, have the same principal place of business as 3BTech, and have closely related ownership to 3BTech, thus meeting the "employer" definition of 29 U.S.C. § 630(b)

10.    Prior thereto Woods timely initiated his Equal Employment Opportunity Commission proceedings by filing of a certain "Charge of Discrimination", as signed and filed by Woods on January 30, 2017. A photocopy of Woods' "Charge of Discrimination" is attached hereto and made a part hereof and identified as "Plaintiff's Exhibit B".

## IV. FACTUAL STATEMENT OF THE CLAIM:

11.    Woods was employed by 3BTech from approximately September 27, 2010, through October 31, 2016, the effective date of his termination.

12.    Woods was employed by 3BTech to manage online sales of electronic devices, including self-balancing scooters – also known as hoverboards – manufactured by Swagway, LLC, a company closely affiliated with 3BTech.

13.    Through the course of its business, it came to the attention of 3BTech that a third party was selling knock-off versions of the Swagway hoverboards on Amazon.com, falsely identifying them as the hoverboards manufactured by Swagway.

14.    Instead of working with Amazon.com to have the false listing removed, 3BTech decided to purchase the entire stock of approximately 3,000 knock-off hoverboards.

15.    Unable to sell these knock-off hoverboards, 3BTech elected to give away the knock-off hoverboards to its employees at a company picnic during August 2016.

16.    The only safety precaution taken by 3BTech to protect its employees from the risks associated with using knock-off hoverboards was to modify the hoverboards by swapping out the battery that came with the hoverboards with a new battery, designed by Swagway, to reduce the risk of them catching fire.

17.    On or about, October 12, 2016, while using the hoverboard given to him by his

employer, 3BTech, Woods drove over a small imperfection in the sidewalk which caused the hoverboard to malfunction, causing one of the wheels to speed up, making the hoverboard spin around, throwing Wood forcibly to the ground where he landed hard on his left side.

18.     From the time Woods was given the hoverboard by his employer until the time of the accident, Woods properly maintained the hoverboard, and it was in the same condition as it was when he received it.

19.     Woods received significant injuries from the fall, including but not limited to breaking his femur and shattering his hip, sending bone fragments into his abdomen.

20.     Woods was taken by ambulance to St. Joseph County Hospital, where they evaluated him and sent him to a hospital in Chicago, Illinois where they performed surgery on his leg, hip and abdomen.

21.     As a result of his injuries, Woods will likely never be able to walk under his own power and has severe pain when trying to support his weight while standing.

22.     Woods took a temporary leave of work from 3BTech in accordance with the FLMA.

23.     Approximately 2 weeks after the accident, while recovering in an in-patient rehab facility, Woods contacted Mike Johnson, the Operations Manager for 3BTech, described his injuries, told Mike that his condition was improving, and that he was able to resume his employment duties on a part-time basis, working for about 4 hours a day from his computer at the rehab facility, until he recovered enough to resume working full time.

24.     With the information Woods provided to 3BTech, 3BTech was fully informed that Woods was, and is an individual with a qualified disability.

25.     Instead of accepting this reasonable accommodation, Mike Johnson visited

Woods, told him that he was being terminated from 3BTech and presented Woods with a separation and release of claims agreement (the "Separation Agreement"). A photocopy of the Separation Agreement is attached hereto and made a part hereof and identified as "Plaintiff's Exhibit C".

26.    In the Separation Agreement, 3BTech acknowledged that Woods was injured while using the hoverboard they provided, but then stated that they are terminating him for reasons unrelated to his injuries. The Separation Agreement does not specify what those reasons may be.

27.    The Separation Agreement then asks Woods to release them from any claims arising from his injury, the ADA and FMLA, in exchange for 3 month's salary and insurance premiums.

28.    Woods declined to sign the Separation Agreement, instead electing to file a claim against 3BTech with the EEOC.

29.    It is clear from 3BTech's course of dealing, by firing Woods within such a short period of time of his accident and by the language they used in the Separation Agreement, that 3BTech terminated Woods as a result of his injury and were attempting to protect themselves from allegations that they violated the Americans with Disabilities Act for failure to provide reasonable accommodation to an employee who had requested reasonable accommodation.

30.    In addition to his loss of income as a result of 3BTech's discriminatory actions, Woods additionally has incurred significant personal liabilities resulting from the very expensive medical and rehabilitative procedures required to aid Woods in his recovery from his injuries.

31.    As a result of the unlawful discriminatory acts on the part of 3BTech, by its administrators, officers, managers, supervisors, employees, or agents, Woods is a victim of

violations of the Americans with Disabilities Act as amended.

32.    As a result of the conduct of 3BTech, Woods is also a victim of a violation of the Family and Medical Leave Act. Woods was entitled to take leave from work because of a serious health condition that made him unable to perform the functions of his position. Furthermore, an employee may take FMLA leave on a reduced leave schedule, 29 U.S.C. § 2612(b). 3BTech had appropriate notice of Woods's need for leave, and interfered with his right to take FMLA leave by terminating him.

33.    Woods is entitled to relief from and against the defendant.

## V.  DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff, Michael Woods, demands judgment against the defendants, including any and all relief as may be provided under the Americans with Disabilities Act and Family and Medical Leave Act, including but not necessarily limited to:

1.    Both back pay and front pay, including compensation for medical treatment and drugs that would have been covered by insurance;

2.    An award of pre-judgment interest;

3.    An award of compensatory damages;

4.    An award of punitive damages; and

5.    An award of costs incurred by Plaintiff in his prosecution of this claim, including his reasonable attorney's fees, expert witness fees, as well as any court costs herein.

/s/ Michael P. Misch
Michael P. Misch
Attorney No. 27970-71
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601
Telephone:  (574) 288-1510
Facsimile: (574) 288-1650
Email: misch@aaklaw.com

## JURY DEMAND

Plaintiff, by counsel, hereby requests trial by jury.

/s/ Michael P. Misch
Michael P. Misch
Attorney No. 27970-71
ANDERSON AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, IN 46601
Telephone:  (574) 288-1510
Facsimile: (574) 288-1650
Email: misch@aaklaw.com

**Plaintiff's Exhibit A**

EEOC Form 161-B (11/16)          U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

_____

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Michael Woods                                          From:  Indianapolis District Office
     985 Woods Edge Drive Apt. C                              101 West Ohio St
     Niles, MI 49120                                          Suite 1900
                                                              Indianapolis, IN 46204

☐  *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 470-2017-00591 | Brien L. Shoemaker, Enforcement Supervisor | (317) 226-6118 |

NOTICE TO THE PERSON AGGRIEVED:                    *(See also the additional information enclosed with this form.)*

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          JUN 3 0 2017
Michelle Eisele,
**District Director**                                     *(Date Mailed)*

Enclosures(s)

cc:     Michael Misch                                    Michael D. Marston
     AAK LAW                                           Botkin & Hall, LLP
     131 S. Taylor Street                              105 E. Jefferson Blvd; Sute 400
     South Bend, IN 46601                              South Bend, IN 46601



EXHIBIT

A

**Plaintiff's Exhibit B**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 470-2017-00591 |

Indiana Civil Rights Commission    and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Michael Woods** | **(574) 386-7273** | |

Street Address                                   City, State and ZIP Code.

**985 Woods Edge Drive Apt. C, Niles, MI 49120**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **3 B TECH** | **15 - 100** | **(877) 328-3248** |

Street Address                                   City, State and ZIP Code

**3431 William Richardson Dr., Suite B, South Bend, IN 46628**

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address                                   City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **11-02-2016** | **11-02-2016** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a qualified individual with a disability, as defined by the Americans with Disabilities Act, as amended. I was hired by 3 B Tech on September 27, 2010. My most recent position was Account Manager. My supervisor was Larz Nieghbor, District Sales Manager. On October 12, 2016, I was in an accident. I had surgery in Chicago, but kept contact with the Company. While I was in an in-patient rehab facility, I contacted Mike Johnson, Operations Manager and asked if he could come by the rehab facility so that we could discuss my return to work. I requested a reasonable accommodation to work from home. However, when Mr. Johnson arrived, he advised me that I was being laid off. Mr. Johnson also gave me a waiver to sign stating I was to receive three months wages and in return I was giving up all of my rights for FMLA and the Americans with Disabilities Act. I refused to sign without having legal counsel review the document. I believe I have been denied a reasonable accommodation and my employment was terminated because of my disability, record of disability, and/or perceived disability, in violation of the Americans with Disabilities Act, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 1/30/17                    X *[signature]* | |
| Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

STUNER

EXHIBIT
B

**Plaintiff's Exhibit C**

## Separation and Release of Claims Agreement

This Separation and Release of Claims Agreement ("**Agreement**"), dated October __, 2016 (the "**Effective Date**"), is entered into by and between 3B TECH, INC., an Indiana corporation ("**3B Tech**"), located at 3431 William Richardson Drive, South Bend, IN 46628, and MIKE WOODS, an individual, residing at _1310 Parliament Dr # D_ _South Bend, IN 46637_ ("**Woods**").

## Recitals

_January 31_ A. Woods was employed by 3B Tech on an at-will basis (the "**Employment**") from _January 31_, 201_1_, to October _31_, 2016 (the "**Separation Date**").

B.     3B Tech is a seller of hoverboards. On October 12, 2016, while not at work and not during work hours, and while using a hoverboard sold by 3B Tech to Woods for his own purposes, and unrelated to the Employment, unknown to 3B Tech and not otherwise directed by 3B Tech, Woods fell off the hoverboard and sustained injury to himself (the "**Personal Injury**").

C.     Woods and 3B Tech wish to terminate Woods employment for reasons unrelated to the Personal Injury and based on the terms herein.

D.     Woods and 3B Tech wish to settle all claims as to the Personal Injury as set forth herein.

NOW, THEREFORE, in consideration of the premises set out above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## Agreement

1.     **Termination of Employment.**  Woods's last day of employment with 3B Tech is the Separation Date, after which date the Parties agree that Woods is not entitled to any further compensation, monies, or other benefit from 3B Tech, including coverage under any benefits plans or programs sponsored by 3B Tech.  The Parties further agree that Woods's termination is unrelated in any way whatsoever to the Personal Injury.

2.     **Release of Claims.**  In exchange for the consideration made by 3B Tech in Section 3 below, Woods and Woods's heirs, executors, administrators, and assigns (collectively the "**Releasors**") forever waive, release, and discharge, and holds harmless 3B Tech, its officers, directors, employees, shareholders, agents, affiliates, heirs and assigns (the "**Released Parties**"), from any and all claims, demands, causes of actions, fees, damages, liabilities, and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown (collectively the "**Claims**"), that the Releasors has ever had against the Released Parties, or any of them, by reason of any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter up to and including the date of Woods's execution of this Agreement, and arising from or related to, directly or indirectly (a) the Personal Injury and (b) the Employment, including



EXHIBIT
C

without limitation, any claims under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) (with respect to existing but not prospective claims), the Equal Pay Act (EPA), the Employee Retirement Income Security Act (ERISA) (with respect to unvested benefits), the Civil Rights Act of 1991, Section 1981 of the Civil Rights Act of 1866 (Section 1981), the Fair Credit Reporting Act (FCRA), the Worker Adjustment and Retraining Notification (WARN) Act, the Genetic Information Non-Discrimination Act (GINA), the Immigration Reform and Control Act (IRCA), and any claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation, sick pay, or severance. However, this release and waiver of claims excludes, and Woods does not waive, release, or discharge any claims which cannot be waived by law.

3.    **Consideration.** In consideration for Woods's execution, and compliance with this Agreement, including the waiver and release of Claims in Section 2 above, 3B Tech agrees to provide the following benefits to Woods:

   a.    In consideration of Woods's release of all Claims arising from the Personal Injury, 3B Tech shall pay for Woods's health insurance premium for a period of three months following the Separation Date, such premium payable directly to the health provider and applicable to the same policy and same coverage available to Woods during the Employment.

   b.    In consideration of Woods's release of all Claims arising from his Employment, 3B Tech shall pay to Woods an amount equal to three (3) months of his regular monthly salary, less all relevant taxes and other withholdings to be paid to Woods. 3B Tech shall issue a Form W-2 to Woods for this amount. Such consideration shall be payable to Woods upon his execution of this Agreement.

Woods agrees and acknowledges that 3B Tech and its counsel have not made any representations to Woods regarding the tax consequences of any payments or amounts received by Woods pursuant to this Agreement.

Woods further agrees and acknowledges that Woods has been properly paid for all hours worked for 3B Tech, that all salary, wages, commissions, bonuses, and other compensation due to Woods have been paid, and that Woods is not owed anything else from 3B Tech other than as provided for in this Agreement.

4.    **Knowing and Voluntary Acknowledgment.** Woods specifically agrees and acknowledges that:

   a.    Woods has read this Agreement in its entirety and understands all of its terms;

   b.    by this Agreement, Woods has been advised of the right to consult with an attorney before executing this Agreement;

2

    c. Woods knowingly, freely, and voluntarily assents to all of its terms and conditions including, without limitation, the waiver, release, and covenants contained in it; and

    d. Woods is executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which Woods is otherwise entitled.

5.   **Confidentiality.**

    a. Confidentiality of this Agreement. Woods agrees and covenants that Woods shall not disclose any of the terms of or amount paid under this Agreement or the negotiation thereof to any individual or entity; provided, however, that Woods will not be prohibited from making disclosures to Woods's attorney, tax advisors, or immediate family members, or as may be required by law.  This Section does not in any way restrict or impede Woods from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order.

    b. Confidentiality of 3B Tech's Proprietary Information.  Woods understands and acknowledges that during the course of Woods's employment by 3B Tech, Woods has had access to and learned about confidential, secret, and proprietary documents, materials, and other information, in tangible and intangible form, of and relating to 3B Tech and its businesses ("**Confidential Information**").  Woods further understands and acknowledges that this Confidential Information and 3B Tech's ability to reserve it for the exclusive knowledge and use of 3B Tech is of great competitive importance and commercial value to 3B Tech, and that improper use or disclosure of the Confidential Information by Woods might cause 3B Tech to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages, and criminal penalties.  Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order.

6.   **Remedies.** In the event of a breach or threatened breach by Woods of any of the provisions of this Agreement, Woods hereby consents and agrees that 3B Tech shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. Any equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available relief.

3

7.      **Successors and Assigns.** 3B Tech may freely assign this Agreement at any time. This Agreement shall inure to the benefit of 3B Tech and its successors and assigns. Woods may not assign this Agreement in whole or in part. Any purported assignment by Woods shall be null and void from the initial date of purported assignment.

8.      **Arbitration.** The Parties agree that any dispute, controversy, or claim arising out of or related to this Agreement, including the validity of this arbitration clause, or any breach of this Agreement shall be submitted to and decided by binding arbitration in South Bend, Indiana. Arbitration shall be administered under the rules of the American Arbitration Association ("AAA"), in accordance with AAA's rules and any requirements imposed by Indiana law. Each party shall pay its own costs of arbitration. Any arbitral award determination shall be final and binding upon the Parties and may be entered as a judgment in a court of competent jurisdiction.

9.      **Governing Law: Jurisdiction and Venue.** This Agreement, for all purposes, shall be construed in accordance with the laws of Indiana without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of Indiana. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

10.     **Entire Agreement.** Unless specifically provided herein, this Agreement contains all of the understandings and representations between 3B Tech and Woods relating to the subject matter hereof and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding the Employment and Personal Injury.

11.     **Modification and Waiver.** No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by Woods and by an authorized representative of 3B Tech. No waiver by either Party of any breach by the other party of any condition or provision of this Agreement to be performed by the other party shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either in exercising any right, power, or privilege under this Agreement operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power, or privilege.

12.     **Severability.** Should any provision of this Agreement be held by a court or arbitral authority of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held to be unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

4

13.     **Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument.

14.     **No Admission of Liability.** Nothing herein shall be construed to be an admission by 3B Tech of any wrongdoing or noncompliance with any federal, state, city, or local rule, ordinance, constitution, statute, contract, public policy, wage and hour law, wage payment law, tort law, common law, or of any other unlawful conduct, liability, wrongdoing, or breach of any duty whatsoever. 3B Tech specifically disclaims and denies any wrongdoing or liability to Woods.

15.     **Notices.** All notices under this Agreement must be given in writing at the addresses indicated in this Agreement or any other address designated in writing by either party.

16.     **Section 409A.** This Agreement is intended to comply with Section 409A of the Internal Revenue Code of 1986, as amended (Section 409A), or an exemption thereunder and shall be construed and administered in accordance with Section 409A. Notwithstanding any other provision of this Agreement, payments provided under this Agreement may only be made upon an event and in a manner that complies with Section 409A or an applicable exemption. Any payments under this Agreement that may be excluded from Section 409A either as separation pay due to an involuntary separation from service, as a short-term deferral, or as a settlement payment pursuant to a bona fide legal dispute shall be excluded from Section 409A to the maximum extent possible. For purposes of Section 409A, any installment payments provided under this Agreement shall each be treated as a separate payment. Any payments to be made under this Agreement upon a termination of employment shall only be made upon a "separation from service" under Section 409A. Notwithstanding the foregoing, 3B Tech makes no representations that the payments and benefits provided under this Agreement comply with Section 409A and in no event shall 3B Tech be liable for all or any portion of any taxes, penalties, interest, or other expenses that may be incurred by Woods on account of non-compliance with Section 409A.

17.     **Acknowledgment of Full Understanding.** THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE EMPLOYEE HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. THE EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE EMPLOYEE HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF THE EMPLOYEE'S CHOICE BEFORE SIGNING THIS AGREEMENT. THE EMPLOYEE FURTHER ACKNOWLEDGES THAT EMPLOYEE'S SIGNATURE BELOW IS AN AGREEMENT TO RELEASE 3B TECH FROM ANY AND ALL CLAIMS THAT CAN BE RELEASED AS A MATTER OF LAW.

*{Signature Page to Separation and Release of Claims Agreement (re: Mike Woods) on following page.}*

*{Signature Page to Separation and Release of Claims Agreement (re: Mike Woods).}*

This Agreement is dated as of the date first written above:

*WOODS:*

_____

MIKE WOODS

*3B TECH:*

3B TECH, INC.
An Indiana corporation

By: _____

Name: _____

Its: _____

6